Eric B. Fjelstad, AK Bar No. 9505020
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone:   +1.907.279.8561
Facsimile:   +1.907.276.3108
EFjelstad@perkinscoie.com

P. Derek Petersen (*Pro hac vice*)
AZ Bar No. 025683
Victoria L. Romine (*Pro hac vice*)
AZ Bar No. 037386
PERKINS COIE LLP
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Telephone:   +1.602.351.8000
Facsimile:   +1.602.648.7000
PDPetersen@perkinscoie.com
VRomine@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendant Contango ORE, Inc.*
*and Rick Van Nieuwenhuyse*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KEVIN GUNTER,<br><br>          Plaintiff,<br><br>     v.<br><br>CONTANGO ORE, INC.;<br>KINROSS GOLD CORPORATION·<br>ROYAL GOLD, INC.;<br>PEAK GOLD, INC.;<br>FAIRBANKS GOLD MINING, INC.;<br>AVALON DEVELOPMENT<br>CORPORATION;<br>BLACK GOLD MINING, INC.;<br>BRADLEY J JUNEAU; | Case No. 3:25-CV-00307-SLG |

Case 3:25-cv-00307-ACP   Document 40   Filed 02/09/26   Page 1 of 29

RICK VAN NIEUWENHUYSE;
CURTIS J. FREEMAN;
YOUNG'S TIMBER, INC.;
JOSEPH A. YOUNG;
KRISTIE CHARLEY (YOUNG);
MICHAEL SAM;
RICKEY WILLIAM HENDRY;
JOHN DOES 1-10,

          Defendants.

**REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ......................................................................................................... 1

    I.     Plaintiff concedes that his claims arise under state law, and he fails to identify any federal question. ...................................................... 1

          A.     Plaintiff concedes that the Alaska Native Claims Settlement Act does not create his cause of action. ........................................... 2

          B.     The Complaint does not raise a federal question—substantial or otherwise. ...................................................................... 3

               1.     Plaintiff's general references to "federal law" or "federal protections" are insufficient to plead federal jurisdiction. ................................................................. 4

               2.     This Court does not possess subject-matter jurisdiction merely because the Tribal Council's immunity is at issue. ............................................................................... 4

    II.    The Tribal Council is a required party, so this Court must dismiss the Complaint. ............................................................................ 5

          A.     The Tribe is a required party. ............................................. 6

          B.     Sovereign immunity bars joinder of the Tribal Council. ................... 7

          C.     "Equity and good conscience" weigh in favor of dismissal. .............. 9

    III.   Plaintiff fails to state a claim upon which relief can be granted. ................ 10

          A.     The statute of limitations bars Plaintiff's claims. ........................... 11

          B.     Plaintiff cannot bring an individual action for injuries to TNC. ...................................................................... 13

                1.     Plaintiff's claims are derivative. ................................ 13

                2.     Plaintiff cannot bring a derivative action because he is not a lawyer and failed to comply with the demand requirement. ...................................................... 14

Case 3:25-cv-00307-ACP   Document 40   Filed 02/09/26   Page 3 of 29

# TABLE OF CONTENTS

**Page**

IV. This Court should deny leave to amend, or alternatively, order Plaintiff to clarify his claims. ....................................................................... 15

    A. Any amendment would be futile. ...................................................... 16

    B. The Court should require any subsequent Complaint to give fair notice of what claims Plaintiff brings against which Defendants and why. ......................................................................... 17

    C. The Court should remind Plaintiff that he must verify the accuracy of the authorities that he cites. .......................................... 18

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 4 of 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*,
789 F.2d 785 (9th Cir. 1986) ...................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 11

*Atwood Grain & Supply Co. v. Growmark, Inc.*,
712 F. Supp. 1360 (N.D. Ill. 1989) .......................................................................... 13

*Bowen v. Energizer Holdings, Inc.*,
118 F .4th 1134, 1142–44 (9th Cir. 2024) ............................................................... 18

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of
Oklahoma*,
532 U.S. 411 (2001) .................................................................................................... 5

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) .................................................................................. 16

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .................................................................................. 11

*Cogo v. Cent. Council of Tlingit & Haida Indians of Alaska*,
465 F. Supp. 1286 (D. Alaska 1979) .......................................................................... 9

*Conerly v. Westinghouse Elec. Corp.*,
623 F.2d 117 (9th Cir. 1980) .................................................................................... 11

*Crowley v. Bannister*,
734 F.3d 967 (9th Cir. 2013) .................................................................................... 18

*Demontiney v. US. ex rel. Dept. of Interior*,
255 F.3d 801 (9th Cir. 2001) .................................................................................... 18

*Dichter-Mad Family Partners, LLP v. United States*,
709 F.3d 749 (9th Cir. 2013) .................................................................................... 10

*Ferris v. Amazon.com Servs., LLC*,
778 F. Supp. 3d 879 (N.D. Miss. 2025) ................................................................... 19

**CASES (CONT).**

*Geer v. Cox*,
242 F. Supp. 2d 1009 (D. Kan. 2003)................................................................. 13

*Gonsalves v. Withy*,
No. CV 22-00395 RT-NONE, 2022 WL 10650259 (D. Haw. Sept. 30,
2022) ....................................................................................................................... 4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)............................................................................................. 18

*J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*,
842 F. Supp. 2d 1163 (D.S.D. 2012) .................................................................... 8

*Jayroe v. Progressive Cas. Ins. Co.*,
No. 3:25-cv-2408-G-BK, 2025 WL 3144976 (N.D. Tex. Oct. 27, 2025) ................... 19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .............................................................................. 18

*Kokhanovski v. TD Bank USA, N.A.*,
No. 1:22-cv-01552-JLT-CDB, 2023 WL 5348361 (E.D. Cal. Aug. 21,
2023) ....................................................................................................................... 4

*Lapidus v. Hecht*,
232 F.3d 679 (9th Cir. 2000) .............................................................................. 13

*Martin v. Maldonado*,
572 P.2d 763 (Alaska 1977)................................................................................ 14

*Maverick Gaming LLC v. United States*,
123 F.4th 960 (9th Cir. 2024) ...................................................................... 5, 6, 9

*McClendon v. United States*,
885 F.2d 627 (9th Cir. 1989) ................................................................................ 8

*McShan v. Sherrill*,
283 F.2d 462 (9th Cir. 1960) ................................................................................ 7

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 6 of 29

**Page(s)**

**CASES (CONT).**

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
   858 F.2d 1376 (9th Cir. 1988) ................................................................................. 1, 2

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   807 F. Supp. 2d 871 (N.D. Cal. 2011), *rev'd in part, vacated in part*,
   779 F.3d 1036 (9th Cir. 2015) .................................................................................. 14

*Okla. Tax Comm'n v. Graham*,
   489 U.S. 838 (1989) ...................................................................................................... 5

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) .................................................................................... 15

*Rosebud Sioux Tribe v. Val-U Const. Co. of S. Dakota, Inc.*,
   50 F.3d 560 (8th Cir. 1995) .......................................................................................... 8

*Russell v. Municipality of Anchorage*,
   743 P.2d 372 (Alaska 1987) ........................................................................................ 12

*Santa Clara Pueblo v. Martinez*,
   436 U.S. 49 (1978) ........................................................................................................ 5

*Sherrell v. Bank of Am., N.A.*,
   No. CV F 11-1785 LJO JLT, 2011 WL 6749765 (E.D. Cal. Dec. 22,
   2011) ............................................................................................................................ 11

*Stillaguamish Tribe of Indians v. Washington*,
   913 F.3d 1116 (9th Cir. 2019) ...................................................................................... 5

*Von Saher v. Norton Simon Museum*,
   592 F.3d 954 (9th Cir. 2010) ....................................................................................... 18

*Washington v. United States*,
   87 F.2d 421 (9th Cir. 1936) ........................................................................................... 7

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ..................................................................................... 10

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 7 of 29

**Page(s)**

**CASES (CONT).**

*White v. Univ. of Cal.*,
    765 F.3d 1010 (9th Cir. 2014) ................................................................................. 6


**OTHER AUTHORITIES**

Evan Ochsner, *AI-Faked Cases Become Core Issue Irritating Overworked
    Judges* (Dec. 29, 2025, 3:00 AM), https://news.bloomberglaw.com/legal
    -ops-and-tech/ai-faked-cases-become-core-issue-irritating-overworked-
    judges .................................................................................................................... 19

Fed. R. Civ. P. 11......................................................................................................... 20

Fed. R. Civ. P. 23.1(b)................................................................................................. 15

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page vi

Case 3:25-cv-00307-ACP     Document 40     Filed 02/09/26     Page 8 of 29

Plaintiff continues to spin a disjointed narrative that has nothing to do with Contango Defendants or the arguments made in their Motion to Dismiss (ECF No. 8 ("MTD")). Although Plaintiff repeatedly suggests that Contango Defendants ask this Court to resolve the land dispute at issue, Contango Defendants do no such thing. Instead, Contango Defendants raise jurisdictional and procedural challenges that are entirely independent from the merits. And despite Plaintiff's attempts to distract the Court with tribal governance issues or the 1996 transfer's validity, neither has any bearing on whether this case should be dismissed. This Reply will therefore refocus on the Complaint's legal deficiencies (disregarding the many irrelevant matters raised in Plaintiff's Response).

Plaintiff's Complaint is deficient several times over. Subject-matter jurisdiction does not exist because the Complaint raises no federal question—substantial or otherwise—and the Tribal Council is a required party whose sovereign immunity bars its joinder. What's more, the Complaint challenges conduct from 1996 and 2008 but offers no plausible explanation for why Plaintiff waited decades to bring his claims. This Court should dismiss the Complaint for any of these independent reasons.

## ARGUMENT

### I. Plaintiff concedes that his claims arise under state law, and he fails to identify any federal question.

"[A]n action arises under federal law if that law creates the cause of action, or if a substantial question of federal law is a necessary element of plaintiff's cause of action." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1383

(9th Cir. 1988) (citations omitted). "[T]he federal-law element must appear on the face of [the] plaintiff's *well-pleaded* complaint." *Id.* "This means that a plaintiff may not establish federal jurisdiction by asserting in its complaint that the defendant will raise a federal-law *defense* to the plaintiff's claim, or by including in its complaint allegations of federal-law questions that are not essential to its claim." *Id.* (citations omitted). Here, Plaintiff's claims are not created by federal law, nor is any federal question a necessary element of his claims.

### A. Plaintiff concedes that the Alaska Native Claims Settlement Act does not create his cause of action.

Plaintiff does not materially dispute that state law creates his cause of action. He concedes that "ANCSA corporations *may alienate land*" and that any such transfer "must be effected pursuant to *lawful corporate governance*"—in other words, that it must comply with state corporate law. [ECF No. 37 ("Resp.") at 43 (emphasis added) (listing "compliance with board and shareholder approval requirements" as prerequisites to the transfer of corporate lands)] Although Plaintiff argues that the "scope" of ANCSA conveyances "fall squarely within federal question jurisdiction" (*id.* at 32), that unsupported assertion does not change the fact that any claim based on the failure of Tetlin Native Corporation ("TNC") to comply with shareholder rights *must* arise under state law governing corporations. ANCSA contains no limitation on alienability, and Plaintiff identifies no other federal restriction that the conveyance purportedly violated. Because his claims do not implicate any ANCSA restriction, ANCSA cannot create Plaintiff's cause of action.

The Motion to Dismiss also cited two of this Court's prior decisions which held that even if a claim involves ANCSA lands, that fact alone cannot create federal jurisdiction. [MTD at 11–12 (citing *Adams v. Kake Tribal Corp.*, No. 1:20-CV-00009-SLG, 2022 WL 160656, at *4 (D. Alaska Jan. 18, 2022), and MTD, Ex. D)] Plaintiff accuses Contango Defendants of mischaracterizing Judge Holland's order "by implying that it 'resolved' or ratified the authority to transfer the land."[1] [Resp. at 13] But they did no such thing. Rather, Contango Defendants cited Judge Holland's order to support the *same argument* that Judge Holland found persuasive in 1999: that "the case presented no federal question." [Resp. at 13–14 ("[Judge Holland's] remand order … determined that federal court was not the proper forum.")] That is precisely what Contango Defendants ask this Court to conclude, in a case challenging the same land transfer for the same reasons.

### B. The Complaint does not raise a federal question—substantial or otherwise.

Because federal law does not create his cause of action, Plaintiff's only hope is that his state-law claims raise a substantial question of federal law.[2] But the Complaint raises

---

[1] Plaintiff also claims (Resp. at 13) that Contango Defendants presented "a materially misleading account" of Exhibit A to their Motion because they "omitt[ed]" that "the pleading alleged … votes were invalid under Alaska law." To the contrary, Contango Defendants twice stated that the 1999 Complaint alleged deficiencies in the shareholder voting process. [MTD at 4, 18]

[2] Plaintiff makes several arguments (Resp. at 31–33) in support of federal jurisdiction that are more properly considered under the substantial federal question framework, so Contango Defendants address them there. But to the extent this Court considers them under the first prong of the jurisdictional analysis—that these laws "create" Plaintiff's cause of action—they are likewise deficient. State (not federal) law governs the validity of the Mineral Lease and Stability Agreement, and the Tribal Council's sovereign immunity could not have "created" any of Plaintiff's claims.

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*: Case No. 3:25-CV-00307-SLG
Page 3

no federal question *at all*—let alone a "substantial" one. [*See* MTD at 11–12] Indeed, Plaintiff's lone support for this theory is that his claims raise issues like "who holds valid title to ANCSA-conveyed land, whether a tribal waiver of immunity was valid, and whether federal protections for shareholders and tribes were circumvented." [Resp. at 34] None of those issues poses a federal question.

### 1. Plaintiff's general references to "federal law" or "federal protections" are insufficient to plead federal jurisdiction.

Plaintiff first argues that whether "a lease and subsequent agreements" violate "federal rules governing tribal land, authority, and sovereign immunity" raises a federal question. [*See id.*] But Plaintiff nowhere identifies what "rules" those agreements supposedly violated. *Gonsalves v. Withy*, No. CV 22-00395 RT-NONE, 2022 WL 10650259, at *2 (D. Haw. Sept. 30, 2022) (holding that a complaint's citation to inapplicable federal laws is insufficient to plead federal jurisdiction); *see also Kokhanovski v. TD Bank USA, N.A.*, No. 1:22-cv-01552-JLT-CDB, 2023 WL 5348361, at *3 (E.D. Cal. Aug. 21, 2023) ("[M]ere references to federal statutes are not enough to establish federal jurisdiction."). The only violation that Plaintiff specifically identifies is TNC's purported failure to comply with shareholder voting requirements. As explained (*supra* pp. 2–3), that question arises under state law, not ANCSA.

### 2. This Court does not possess subject-matter jurisdiction merely because the Tribal Council's immunity is at issue.

Plaintiff next argues (Resp. at 32–33) that whether the Tribal Council waived its sovereign immunity raises a federal question. But "the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which

… arises under federal law." *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989); *Stillaguamish Tribe of Indians v. Washington*, 913 F.3d 1116, 1119 (9th Cir. 2019) ("[T]he possible existence of a tribal immunity defense ... did not convert [state claims] into federal questions."). *Contango Defendants*—not Plaintiff—raised tribal immunity as a defense to Plaintiff's claims. Because the Tribal Council's immunity does not arise from Plaintiff's well-pleaded complaint, it cannot be a basis for federal jurisdiction. *See Graham*, 489 U.S. at 840–41 ("[W]hether a case is one arising under federal law … must be determined from what necessarily appears in the plaintiff's statement of his own claim.").

Plaintiff cites *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001) for the proposition that the Tribal Council's immunity raises a federal question.[3] [Resp. at 32–33] But the Supreme Court decided *C & L Enterprises* under 28 U.S.C. § 1257, which (unlike § 1331's "arising under" jurisdiction) authorizes the Supreme Court to review decisions from "the highest court of *a State*." *Id.* (emphasis added). In other words, *C & L Enterprises* was brought *in state court*, which only further underscores that that is where Plaintiff's claims belong.

## II. The Tribal Council is a required party, so this Court must dismiss the Complaint.

The Court's analysis under Rule 19 is threefold. First, the Court determines "whether the absent party is 'required.'" *Maverick Gaming LLC v. United States*, 123 F.4th

---

[3] Plaintiff also cites *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978). But that case (unlike this one) challenged a tribal ordinance under the Indian Civil Rights Act—a federal statute. Because federal law created the cause of action, jurisdiction lay properly in the federal courts.

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 5

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 13 of 29

960, 971–72 (9th Cir. 2024). That is, the Court must consider whether (1) complete relief cannot be provided "if the action is limited to the existing parties," or (2) the absent party's absence will "impair or impede" its ability to protect its interests. *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014). If a party is required, the Court next considers "whether joinder of that party is feasible." *Maverick*, 123 F.4th at 971–72. Although courts typically apply a four-factor test to determine feasibility, consideration of those factors is unnecessary when the absent party is immune because "immunity itself" is a "compelling factor." *White*, 765 F.3d at 1028. Finally, if joinder is infeasible, the Court determines "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Maverick*, 123 F.4th at 972. Here, because the Tribal Council is a required party and cannot be joined, the Court must dismiss the Complaint.

### A. The Tribe is a required party.

Contrary to Plaintiff's contention (Resp. at 51–52), this Court cannot determine ownership of hundreds of thousands of acres of tribal lands without allowing the record owner of that land to be heard. Plaintiff seems to confuse the Tribal Council's "interest" in the land with its "*claim* to an interest" by arguing that "[a]bsent a documented transfer of authority … the Tribe lacks a cognizable property interest." [*Id.* at 44] *See White*, 765 F.3d at 1026. But the Tribal Council need only possess a *claim* to an interest to be a required party, "even if the dispute is ultimately resolved [against it]." *White*, 765 F.3d at 1026. Regardless of what Plaintiff alleges about the 1996 transfer's ultimate validity, the Tribal Council clearly has a claim to an interest—since it has been the record owner of the land for over thirty years.

Plaintiff also contends (Resp. at 47–48) that the Tribal Council is not required because Contango Defendants can represent the Tribal Council's interest, so there is no "risk of prejudice or inconsistent obligations." Plaintiff is wrong. First, a lessor is a required party in a quiet-title action *regardless* of whether a lessee has similar interests. *Washington v. United States*, 87 F.2d 421, 430 (9th Cir. 1936) ("The lessor is affected … because the thing, which he claims he owned at the time of the grant to the lessee, and which he claims will revert to him, is declared by the decree to be nonexistent."); *see also McShan v. Sherrill*, 283 F.2d 462, 463–64 (9th Cir. 1960) ("No decree can be entered affecting the title to property … unless *all* of the parties interested in the title … and who will be directly affected by any judgment … are properly before the Court." (emphasis added)).

Second, there is a risk of inconsistent obligations because any judgment here would not bind the Tribal Council. If the Court quieted title back to TNC, Contango Defendants will still owe contractual obligations—including the obligation to pay royalties—to the Tribal Council. Indeed, the Tribal Council could sue Contango Defendants to enforce compliance with those contractual obligations. Although Plaintiff suggests that the Court could condition any relief on "the participation or further ratification by the Tribe" (Resp. at 52), that argument only further shows that the Tribal Council is a required party—the necessity of a conditional judgment means that the Tribal Council must be party to the judgement for it to have any meaningful effect.

### B. Sovereign immunity bars joinder of the Tribal Council.

The Tribal Council did not waive sovereign immunity. [*Contra* Resp. at 45–46] A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 7

*A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 789 (9th Cir. 1986). And "the terms of a sovereign's consent to be sued in any court define that court's jurisdiction to entertain the suit." *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) (cleaned up). As such, courts have held that waivers of immunity that are expressly limited to the enforcement of contracts do not extend to other claims. *Rosebud Sioux Tribe v. Val-U Const. Co. of S. Dakota, Inc.*, 50 F.3d 560, 563 (8th Cir. 1995) (holding that waiver of claims "under [a] contract" did not extend to tort claims); *J.L. Ward Assocs., Inc. v. Great Plains Tribal Chairmen's Health Bd.*, 842 F. Supp. 2d 1163, 1179–80 (D.S.D. 2012) (holding that waiver of contract claims did not extend to misrepresentation claims).

Here, Plaintiff suggests (Resp. at 39–46) that the Stability Agreement waived the Tribal Council's sovereign immunity, but the Stability Agreement expressly limited any waiver to claims arising *from that Agreement*:

> Tetlin hereby expressly waives its sovereign immunity *to the limited extent* necessary to permit judicial review by a court of competent jurisdiction as provided herein, and shall not raise sovereign immunity as a defense to such proceedings, with respect to the following relief *only*:
>
> > i. declarations of the parties' rights, duties, adequacy of performance or breach *of or under this Agreement*;
> >
> > ii. interlocutory or final orders directing either party to specifically perform its obligations *under this Agreement*;
> >
> > iii. orders enforcing a decision or judgment of any court of competent jurisdiction;
> >
> > iv. Tetlin shall not be liable for attorney's fees of the other party or any costs;

> v. Tetlin shall *only* be liable for money damages to the extent that the award can be paid from royalties previously paid to Tetlin and/or future royalty payments under Article 3.3 of the Lease.

[ECF No. 20-1 at 5–6 (emphasis added)] Plaintiff is not a party to the Stability Agreement, nor does he seek a declaration of the parties' "rights" or "obligations" thereunder or request specific performance. [*Id.*] Indeed, Plaintiff seeks to rescind the Agreement based on claims of corporate malfeasance by an entirely separate entity (Compl. at 3, 37–38), which is decidedly *not* within the scope of the Tribal Council's limited waiver of immunity for contract claims. Because the Tribal Council's waiver does not extend to Plaintiff's claims in tort and corporate law, the Tribal Council is immune and cannot feasibly be joined. [*See* MTD at 25–29 (analyzing the feasibility factors)]

### C.    "Equity and good conscience" weigh in favor of dismissal.

Plaintiff argues (Resp. at 48, 53–54) that he will have no forum to sue if the Court dismisses his claim. The Ninth Circuit, however, has squarely rejected that reasoning as a basis for denying dismissal: "[W]e have regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Maverick*, 123 F.4th at 981. Indeed, "virtually all of the cases to consider the question appear to dismiss under Rule 19, *regardless of whether an alternative remedy is available*, if the absent tribes are Indian tribes invested with sovereign immunity." *Id.* (emphasis added).

That result is not inequitable: it's the law. The fact that no forum exists to adjudicate Plaintiff's claims is the very reason *for* sovereign immunity. The doctrine "is intended to protect [tribal assets] from loss through litigation." *Cogo v. Cent. Council of Tlingit &*

*Haida Indians of Alaska*, 465 F. Supp. 1286, 1288 (D. Alaska 1979); *see also Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 770 (9th Cir. 2013) (adopting district court's observation that sovereign immunity "preserv[es] public revenues and property" and "courts should be wary of creating huge and unpredictable governmental liabilities … for broad policy decisions that necessarily impact large numbers of people"). That is precisely what Plaintiff seeks here. Despite the alleged misconduct from decades ago, the land is now held by the Tribal Council for the benefit of the Tribe—including the millions of dollars in royalties the Tribe receives from its Mineral Lease with Contango Defendants.

Put simply, there would be nothing "equitable" about allowing this challenge to the Tribal Council's ownership of 643,000 acres of ancestral land and millions of dollars in royalty rights to proceed without the Tribal Council. [MTD at 29–30] Nor is it equitable to deprive the Tribal Council of ownership of its lands to the detriment of other members of the Tetlin Tribe whose interests are not represented in this litigation. Rule 19 compels dismissal.

## III. Plaintiff fails to state a claim upon which relief can be granted.

Plaintiff's Response does not change the fact that his Complaint fails "to cross the line between possibility and plausibility." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021). Even construed liberally, his claims are untimely on their face because the purported unlawful conduct occurred *decades* ago. Plaintiff nowhere pleads specific facts to show a plausible theory of equitable tolling or delayed discovery, so the claims against Contango Defendants must be dismissed. And even though Plaintiff now says that he abandons any attempt to bring a derivative claim, that contention is hardly

plausible: Plaintiff seeks rescission of the Mineral Lease and transfer of an unclouded title *back to TNC*. Regardless of how cleverly Plaintiff frames his claims, he ultimately seeks relief on behalf of TNC, which makes his claims derivative—not direct. As Contango Defendants already explained (MTD at 21–24), any derivative claim fails both because Plaintiff is not a lawyer and he failed to make a demand or plead futility. The Court should dismiss the claims against Contango Defendants for failure to state a claim.

### A. The statute of limitations bars Plaintiff's claims.

The Court must dismiss claims "[w]hen the running of the statute is apparent from the face of the complaint." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980). A motion to dismiss should also be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.*

Here, Plaintiff concedes that he brings these claims *decades* after the conduct at issue, relying instead on equitable tolling and the discovery rule. But although the time when a plaintiff could have reasonably discovered his claim is usually a fact question, Plaintiff cannot use "labels and conclusions … devoid of further factual enhancement" to plead a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Indeed, courts must dismiss claims as time-barred when the Complaint does not plead a factual basis for tolling of the statute of limitations. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (affirming dismissal of claims because plaintiff failed to allege facts showing equitable tolling); *Sherrell v. Bank of Am., N.A.*, No. CV F

11-1785 LJO JLT, 2011 WL 6749765, at *11 (E.D. Cal. Dec. 22, 2011) (dismissing claims where plaintiff failed to "allege facts supporting a theory of delayed discovery").

In his Response, Plaintiff introduces new theories of delayed discovery, alleging that his claims were "obscured through non-disclosure, selective disclosure, and exclusion from governance." [Resp. at 36] But the Complaint pleads no specific facts to show any nondisclosure. At most, it says,

> [M]any of the violations are continuing in nature and have only recently come to light. The fraudulent concealment of material facts—such as the secret profits to certain individuals and the true lack of authority behind the land transfers—means that any limitations period is tolled until discovery of the fraud.

[Compl. at 26–27] Even construed liberally, these nondisclosure allegations address only the Self-Dealing Claim against the Tribal Defendants. [*Id.* at 13–14, 18–19, 29] The Complaint does not allege concealment regarding the Land-Transfer Claim or Lease Claim, nor does it allege any other reason why Plaintiff could not have sued during the limitation period.[4] To the contrary, both claims depend on documents that have been public record for decades. [MTD at 18 (arguing that the quit-claim deed, 1999 litigation, and Contango's Form 10-K are public record)][5] And in any event, Plaintiff does not allege any facts showing that Contango Defendants owed him any duty to disclose. *See Russell v.*

---

[4] To the extent Plaintiff brings a derivative claim on behalf of TNC (*infra* pp. 13–14), the fact that the 1999 litigation raised the same issues as here clearly shows TNC's notice of its claims.

[5] Plaintiff argues (Resp. at 18–21) that Contango Defendants misrepresented the contents of Contango's Form 10-K by omitting material context. Although Contango Defendants dispute that contention, Form 10-K is irrelevant at this stage, so Contango Defendants will not address it.

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 12

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 20 of 29

*Municipality of Anchorage*, 743 P.2d 372, 376 (Alaska 1987) ("[M]ere failure by a person to disclose a fact concerning a cause of action which arises against him does not suffice to toll the statute unless the defendant owed a duty of disclosure.").

### B. Plaintiff cannot bring an individual action for injuries to TNC.

Plaintiff now contends (Resp. at 5) that he does not bring any claim on behalf of TNC—a contention belied by the Complaint (at 6–7)—and asserts claims only on his own behalf. But his claims still fail.

### 1. Plaintiff's claims are derivative.

"[I]f the cause of action is based on acts relating solely to … stock in its entirety, it is generally a corporate cause of action." *Atwood Grain & Supply Co. v. Growmark, Inc.*, 712 F. Supp. 1360, 1364 (N.D. Ill. 1989). "The right to vote is a right owed to all shareholders" and is therefore not "a separate and distinct harm." *Geer v. Cox*, 242 F. Supp. 2d 1009, 1018 (D. Kan. 2003). Courts have accordingly prohibited plaintiffs from framing injuries in terms of "voting rights" to avoid bringing a derivative action. *E.g.*, *Atwood Grain*, 712 F. Supp. at 1364 (holding that the Board's "unilateral decision to sell certain assets" and deny shareholders "their right to vote" was a derivative claim); *Geer*, 242 F. Supp. 2d at 1018 (holding that although framed as a "deprivation of the individual shareholders' voting rights," the claim was derivative because it alleged that the Board improperly "sold the assets without shareholder approval").[6]

---

[6] *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000) is not to the contrary. There, the Ninth Circuit held that when shareholders suffer a "wrong involving one of his or her *contractual* rights as a shareholder, such as the right to vote," then the claim is direct, not derivative. *Id.* at 683 (emphasis added). But Plaintiff does not allege violation of any contractual right

At bottom, Plaintiff seeks redress for an alleged injury to TNC. He alleges impairment of his "right to participate meaningfully in corporate decision-making, his economic interests as a shareholder, and his legal and equitable interests in land conveyed under a federally created statutory framework," and "[t]he loss of voting rights, dilution of shareholder value, and impairment of legally protected interests." [Resp. at 34–35] Despite Plaintiff's attempts to frame these injuries as violations of his personal rights, the crux of his claim has nothing to do with these supposed individual injuries. He instead seeks redress for an injury to TNC—namely, the transfer of corporate assets to the Tribal Council. Indeed, the remedy Plaintiff seeks is not individual damages for harm to his personal interests but for the Court to quiet title *back to TNC*. Any individual harm is therefore "merely incidental to the wrong suffered by the corporation." *Martin v. Maldonado*, 572 P.2d 763, 773 (Alaska 1977). What's more, none of Plaintiff's alleged "individual" injuries has anything to do with Contango Defendants. [Resp. at 34–35 (at most, alleging violations of corporate law against TNC's former directors)]

### 2. Plaintiff cannot bring a derivative action because he is not a lawyer and failed to comply with the demand requirement.

Because Plaintiff's claims are derivative, the Court must dismiss the Complaint. Although Plaintiff contends (Resp. at 35–36) that derivative claims should not be dismissed at the pleading stage and he should be able to bring derivative claims after discovery, the

---

to vote; his claim instead rests on violations of Alaska statutory law. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 807 F. Supp. 2d 871, 880 (N.D. Cal. 2011) (recognizing this distinction), *rev'd in part, vacated in part*, 779 F.3d 1036 (9th Cir. 2015) (reversing because shareholder rights in that case arose from contract).

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 14

Federal Rules belie both contentions. Fed. R. Civ. P. 23.1(b) (imposing heightened pleading standard on derivative claims). Plaintiff cannot delay resolution of his derivative claims until discovery because that is precisely why the Federal Rules require more. *See Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) ("[S]trict compliance with Rule 23.1 … is necessary *before* a derivative suit can wrest control of an issue from the board of directors.").

Moreover, Plaintiff does not dispute (and therefore concedes) that he failed to satisfy the demand requirement or explain why demand is futile. [*See* MTD at 23–24] Nor does Plaintiff imply that he intends to retain counsel. In the absence of both requirements, Plaintiff cannot bring derivative claims, now or ever. The Court should dismiss the Complaint.

**IV.    This Court should deny leave to amend, or alternatively, order Plaintiff to clarify his claims.**

Leave to amend should be denied because Plaintiff's claims are barred several times over. They do not raise a federal question, cannot be adjudicated without joining a party that cannot be joined, and are barred by the statute of limitations and the rules governing derivative actions. Amendment cannot change those legal deficiencies.

Nor does Plaintiff's Response provide clarity to the confusing (and often irrelevant) tale that he attempts to plead in his Complaint. Contango Defendants still do not know what law they are accused of violating or why the several pages devoted to tribal governance issues has anything to do with them. Even worse, Plaintiff cites several cases that apparently do not exist. Despite searching Westlaw, Lexis, and Google, Contango

Defendants cannot locate many of Plaintiff's purported legal authorities and can only assume that they were hallucinated by generative artificial intelligence ("AI"). So Contango Defendants respectfully request that, if the Court is inclined to grant leave to amend (and it should not), it also order Plaintiff to specifically identify his claims in any amended complaint and ensure that the cases he cites actually exist and stand for the proposition for which he relies on them.

### A. Any amendment would be futile.

Leave to amend "is properly denied … if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, Plaintiff's claims cannot be saved by amendment. The Land-Transfer and Self-Dealing Claims rely on violations of corporate law that will never create a federal question. And although it's unclear what claim Plaintiff attempts to bring against Contango Defendants, any claim is dependent on resolution of the Land-Transfer Claim. If the Tribal Council lawfully obtained the land, then it had every right to lease it to Contango Defendants. At most, Plaintiff's claims lie in tort, corporate, or real property law. None create federal jurisdiction.

Nor can Plaintiff amend his way around the Tribal Council's absence. The remedies he seeks—quiet title and rescission of the Mineral Lease and related agreements—cannot be granted without the Tribal Council. Indeed, *any* judgment related to ownership of the land or validity of the Mineral Lease is worthless without binding the Tribal Council, and Plaintiff has not proposed any other remedy.

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 24 of 29

But even without the dispositive jurisdictional and procedural barriers, any claim against Contango Defendants is futile. Contango Defendants had nothing to do with the 1996 land transfer. It owed no duty to TNC or Plaintiff to disclose the Mineral Lease or the related contracts. Nor did it owe any fiduciary duty to Plaintiff, the Tribal Council, or TNC to ensure that every owner of the lands at issue had complied with Alaska law. Even if Plaintiff could overcome the other deficiencies in his Complaint, he cannot manufacture any wrongdoing on behalf of Contango Defendants for simply entering a Mineral Lease with the landowner of record. Whatever claims may lie in Tetlin's storied history, they have nothing to do with Contango Defendants. Therefore, if this Court is inclined to grant leave to amend as to the other claims, it should not do so against Contango Defendants.

**B.    The Court should require any subsequent Complaint to give fair notice of what claims Plaintiff brings against which Defendants and why.**

As explained (*supra* pp. 16–17), any amendment would be futile. But if the Court does consider amendment, Contango Defendants respectfully request that the Court order Plaintiff to clarify his claims. Despite raising this issue in their Motion (at 30–32), Plaintiff's Response provides no further clarity regarding the claims against Contango Defendants. If anything, the Response makes things *more* confusing because Plaintiff refuses to name individual defendants, repeatedly referring to "Defendants" without specificity as to who he is referring to. [*See, e.g.*, Resp. at 52 (stating that "*Defendants* attach exhibits consisting primarily of later certifications, estoppel language, and stability agreements that purport to memorialize prior approvals" when Contango Defendants did no such thing); 56 (referring to "*Defendants'* SEC filings" when many defendants are

individuals); 63 (referring to "*Defendants'* arguments regarding service of process" when only Kinross Gold (ECF No. 11 at 9) made a defective service argument)] Plaintiff's collective treatment of "Defendants" makes it impossible for Contango Defendants to understand what they are alleged to have done—let alone evaluate whether any laws were violated. At minimum, if the Court grants leave to amend, it should order Plaintiff to (1) state his allegations in separately numbered paragraphs and (2) separately list each claim and (a) who—by name—it is brought against, (b) what conduct supports it, and (c) what law the conduct violates. [*See* MTD at 31–32 (citing *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996); *Tate v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-cv-1748-LDG (RJJ), 2010 WL 3829221, at *3 (D. Nev. Sept. 24, 2010))]

### C. The Court should remind Plaintiff that he must verify the accuracy of the authorities that he cites.

Contango Defendants would be remiss if they did not raise one last issue: Plaintiff appears to have a habit of misciting cases or citing cases that do not exist.[7] Contango

---

[7] Plaintiff cites the following cases that counsel could not locate: "*Baraga Prod. v. Keweenaw Bay Indian Cmty.*, 156 F. Supp. 2d 852,860 (W.D. Mich. 2001)" (Resp. at 33); "*Banks v. Univ. of Alaska*, No. 3:23-cv-00025-SLG, Order at 3 (D. Alaska Mar. 2023) (Gleason, J.)" (Resp. at 63); "*Alyeska Pipeline Service Co. v. Kluti Kaah Native Village* (Alaska 2004)" (Compl. at 25); "*Chugach Natives, Inc. v. Doyon, Ltd.* (D. Alaska 1984)" (Compl. at 25).

Plaintiff cites the following cases in support of quotes that are not present in the cited case: "*Bowen v. Energizer Holdings, Inc.*, 118 F .4th 1134, 1142–44 (9th Cir. 2024)" (Resp. at 16–17); "*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)" (Resp. at 31); "*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)" (Resp. at 34); "*Von Saher v. Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010)" (Resp. at 37); "*Demontiney v. US. ex rel. Dept. of Interior*, 255 F.3d 801, 811 (9th Cir. 2001)" (Resp. at 46); "*Crowley v. Bannister*, 734 F.3d 967, 976 (9th Cir. 2013)" (Resp. at 62).

---

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 18

Defendants can only assume that Plaintiff used generative AI in drafting his pleadings without verifying the accuracy of the results. That is unacceptable, and Plaintiff should be reminded of his duties to the Court and opposing counsel that require him to vet his sources before citing them to the Court.

Although Contango Defendants recognize that Plaintiff is pro se, "that does not relieve [him] of [his] obligation under Rule 11 to confirm the validity of all cited legal authority." *Jayroe v. Progressive Cas. Ins. Co.*, No. 3:25-cv-2408-G-BK, 2025 WL 3144976, at *3 (N.D. Tex. Oct. 27, 2025) (citing Fed. R. Civ. P. 11); *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) (holding that pro-se plaintiff's citation to non-existent cases violated Rule 11). As this Court is aware, the time it spends chasing down nonexistent authorities takes time away from "more pressing matters"— including deciding cases.[8] Moreover, *counsel* spent significant time trying to find Plaintiff's hallucinated cases and drafting this section to call them to the Court's attention. Unfortunately, Plaintiff's oversight is only the latest in what has become an epidemic of both parties and attorneys failing to vet the authorities on which they rely.[9]

Given the severity and increasing prevalence of this issue, Contango Defendants respectfully request that the Court remind Plaintiff that he must verify the accuracy of any

---

[8] Evan Ochsner, *AI-Faked Cases Become Core Issue Irritating Overworked Judges* (Dec. 29, 2025, 3:00 AM), https://news.bloomberglaw.com/legal-ops-and-tech/ai-faked-cases-become-core-issue-irritating-overworked-judges.

[9] *Supra* note 8.

REPLY IN SUPPORT OF CONTANGO DEFENDANTS' MOTION TO DISMISS
*GUNTER v. CONTANGO ORE, INC., et al.*; Case No. 3:25-CV-00307-SLG
Page 19

legal authorities he cites in future filings and advise him that his failure to do so may be grounds for sanctions, including dismissal. *See* Fed. R. Civ. P. 11.

DATED: February 9, 2026.

**PERKINS COIE LLP**

s/Eric B. Fjelstad
Eric B. Fjelstad, AK Bar No. 9505020
EFjelstad@perkinscoie.com
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone: +1.907.279.8561
Facsimile: +1.907.276.3108

P. Derek Petersen, AZ Bar No. 025683
(*Pro hac vice*)
PDPetersen@perkinscoie.com
Victoria L. Romine, AZ Bar No. 037386
(*Pro hac vice*)
VRomine@perkinscoie.com
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Telephone: +1.602.351.8000
Facsimile: +1.602.648.7000

*Attorneys for Defendant Contango ORE, Inc.*
*and Rick Van Nieuwenhuyse*

Case 3:25-cv-00307-ACP    Document 40    Filed 02/09/26    Page 28 of 29

# CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system.  Participants in Case No. 3:25-CV-00307-SLG who are registered CM/ECF users will be served by the CM/ECF system. Plaintiff, Kevin Gunter, will be served via email and U.S. First Class Mail at the address listed below:

> Kevin Gunter
> 1714 Southern Ave.
> Fairbanks, Alaska 99701
> gunter@spirit4all.org

Defendant Rickey William Hendry will be served via U.S. First Class Mail at the address listed below:

> Rickey William Hendry
> P. O. Box 63
> Apple Springs, Texas 75926

s/ Eric B. Fjelstad