# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

KEVIN GUNTER, on behalf of himself, the ad hoc committee of Tetlin tribal members, and disenfranchised shareholders of The Tetlin Native Corporation,

          Plaintiff,

  v.

CONTANGO ORE, INC.; KINROSS GOLD CORPORATION; ROYAL GOLD, INC.; PEAK GOLD, INC.; FAIRBANKS GOLD MINING, INC.; AVALON DEVELOPMENT CORPORATION; BLACK GOLD MINING, INC.; BRADLEY J. JUNEAU; RICK VAN NIEUWENHUYSE; CURTIS J. FREEMAN; YOUNG'S TIMBER, INC.; JOSEPH A. YOUNG; KRISTIE CHARLEY (YOUNG); MICHAEL SAM; RICKEY WILLIAM HENDRY; and JOHN DOES 1-10,

          Defendants.

Case No. : 3:25-cv-00307-ACP

## ORDER GRANTING CONTANGO ORE, INC.'S MOTION TO DISMISS COMPLAINT TO QUIET TITLE AND FOR EQUITABLE RELIEF (Dkt. 8) AND DISMISSING THE COMPLAINT

A native corporation formed pursuant to the Alaska Native Claims Settlement Act (ANCSA) transferred about 643,000 acres of land to a tribe's governing body in 1996. Then in 2008, the tribe leased most of the land to mining companies for exploration and development.

1

In 2025, the Plaintiff, a shareholder in the native corporation, sued several parties with a connection to the land, including the mining companies and some of the tribe's leaders. The Plaintiff alleges that the 1996 land transfer was unlawful because it did not follow corporate voting procedures imposed, in his view, by ANCSA itself. The Plaintiff also alleges that people involved in the land transfer (and people subsequently managing the land) committed fraud and various torts. The Defendants responded by filing motions to dismiss based on differing theories. This order focuses on a threshold matter: subject matter jurisdiction.

As explained below, the motion to dismiss filed by Defendant Contango Ore, Inc. is **GRANTED** because the Court does not have subject matter jurisdiction over the complaint.[1] The shareholder has not asserted a valid cause of action under federal law. Rather, his claims about corporate governance, fraud, and torts arise (if at all) under state law, and those state claims do not involve substantial federal issues. The complaint is thus **DISMISSED** without prejudice for lack of federal jurisdiction.

## I. BACKGROUND

### A. *Factual Allegations*

Congress passed ANCSA in 1971 to "settle all land claims by Alaska Natives."[2] The law authorized transfer of "approximately 44 million acres of Alaska land to state-chartered private business corporations that were to be formed pursuant to the statute; all of the

---

[1] Dkt. 8 (Contango Ore, Inc. and Rick Van Nieuwenhuyse's Motion to Dismiss Complaint to Quiet Title and for Equitable Relief).

[2] *Alaska v. Native Vill. of Venetie*, 522 U.S 520, 523 (1998).

shareholders of these corporations were required to be Alaska natives."[3] Under this framework, the Tetlin Native Corporation (TNC) was chartered under Alaska law in 1973 and deeded over 700,000 acres of land by the federal government.[4]

In 1996, TNC allegedly transferred about 643,000 acres of land to the Tetlin Tribal Council, a tribal governance body, in exchange for $10.[5] The complaint alleges that the transaction "was executed unilaterally by TNC's leadership" without "seeking or obtaining" approval from TNC's shareholders."[6] several years after the land transfer, TNC shareholders sued its directors in federal court, arguing that the land transfer was unlawful because the corporation did not hold a shareholder vote beforehand.[7] The litigation led to a settlement, but the District Court declined to enforce the settlement after concluding that it lacked subject matter jurisdiction over the entire case.[8] The case proceeded in state court, where the settlement was ultimately voided.[9]

---

[3] *Id.* at 524.

[4] Dkt. 1 at 16 (Complaint). The Court takes well-pleaded factual allegations as true at this stage of litigation. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

[5] *Id.* at 17.

[6] *Id*.

[7] Dkt. 8-2 (*Tetlin Native Corp. v. Adams*, Case no. F99-0008CV (HRH)).

[8] Dkt. 8-4. The District Court assumed it had subject matter jurisdiction during the settlement phase of the case, including when it entered a judgment based on the settlement, because no one challenged jurisdiction. The Court reevaluated that assumption when a party finally raised the issue.

[9] *Jimerson v. Tetlin Native Corp.*, 144 P.3d 470 (Alaska 2006) (voiding settlement on the ground that it violated ANCSA).

In 2008, the Tribal Council allegedly entered a mineral lease with Contango Ore, Inc. that included most of the land acquired from TNC.[10] The lease gave Contango "rights to explore and extract minerals" in exchange for "3%-5%" royalty and "annual payments" to the Tribal Council.[11] Negotiations over the lease involved Kristie Charley, an official for the Tribal Council; the lease was extended in 2014 by Micheal Sam, another official for the Tribal Council.[12] According to the complaint, Contango entered the lease knowing that the "underlying land title was in question."[13] And since entering the lease, Contango has partnered with other mining companies on the project, including Kinross Gold Corporation; Royal Gold, Inc.; Peak Gold, Inc.; and Fairbanks Gold Mining, Inc.[14]

In 2018, the Tribal Council allegedly entered "a sublease or similar agreement" with Young's Timber, Inc, which is owned by Joseph A. Young.[15] The complaint says this lease granted "a direct interest in some portion of the Tetlin lands or the mining operations" to Young's Timber.[16]

---

[10] Dkt. 1 at 18-19.

[11] *Id.*

[12] *Id.* at 21.

[13] *Id.* at 19-20. To make this point, Gunter quotes a 10-K form that Contango filed with the Securities and Exchange Commission.

[14] *Id.* at 1 (caption), 8-15, 18-21.

[15] *Id.* at 21.

[16] *Id.*

4

**B.** *The Complaint.*

The pro se plaintiff in this case, Kevin Gunter, filed a 70-page complaint in October 2025.[17] He initially purported to represent himself, "the Ad Hoc Committee of Tetlin Tribal Members, and disenfranchised shareholders of the Tetlin Native Corporation."[18] But Gunter later said he was only representing himself.[19]

The lengthy complaint is difficult to parse at times. But Gunter appears to raise three main legal claims. First, he alleges that the initial 1996 land transfer is void because it happened "without any shareholder approval."[20] He says this "violated federal law (ANCSA)" and the Native Corporation's "internal rules (no shareholder or proper tribal consent)."[21] Second, Gunter alleges that the Defendants' mining activity was unlawful because it was done using "false, misleading, or incomplete information [about] the applicant's legal authority over the land."[22] Third, he alleges that several Defendants engaged in fraud and various torts.[23]

---

[17] Dkt. 1.

[18] *Id* at 70.

[19] Dkt. 37 at 5 (Consolidated Opposition to Defendants' Motions to Dismiss).

[20] Dkt. 1 at 3.

[21] *Id.* at 36.

[22] *Id.* at 23.

[23] *Id.* at 30. Gunter also makes allegations about tribal "governance manipulation." *Id.* at 23. But he abandoned those claims in his opposition, saying "this case does not require the court to adjudicate tribal governance." Dkt. 37 at 3, 33 (citation modified).

Aside from state law, ANCSA appears to be the principal federal statute on which Gunter relies, although he cites others.[24] The complaint mentions the "Treaty of Cession between Russia and the United States," the Indian Reorganization Act, the Indian Self-Determination and Education Assistance Act, and Executive Order 5365, which he calls the "Establishment of Tetlin Indian Reserve."[25]

For relief, Gunter "seeks to have the 1996 transfer, and 2008 (and subsequent) leases declared void *ab initio*, to quiet title in the affected Tetlin lands back to [TNC], rescind the unauthorized mining agreements, and to recover assets and profits unjustly diverted from the Tetlin community."[26] He also seeks "the appointment of an independent trustee or receiver to ensure that these lands (and any proceeds derived from them) are managed going forward for the benefit of the Tetlin Native Corporation shareholders."[27] He further asks for, among other things:

- A permanent injunction prohibiting the Defendants from "entering upon, mining, exploring, or otherwise exploiting the Tetlin lands"
- A court-supervised "independent, certified forensic auditor to conduct a full forensic accounting of all relevant financial activities"
- An order requiring Defendants to "immediately inspect and top off all fuel tanks [to prevent] environmental contamination" on the disputed land
- An order compensating Gunter for "litigation expenses," "[r]easonable hourly or monthly compensation," "[c]osts of higher

---

[24] Dkt. 1 at 36 ("Because these [transactions] violated federal law (ANCSA) and [the Native Corporation's] and the Tribe's internal rules . . . they never conveyed any valid interest in the land to begin with."), 68-70.

[25] *Id.* at 68-69.

[26] *Id.* at 3.

[27] *Id.* at 3.

education or professional training," and "[a]llowances for travel, lodging, communication, and administrative supplies"

- An injunction restoring "tribal self-governance through a fair and transparent election to be held for the leadership of the Native Village of Tetlin"
- An order "seizing/impounding the fleet of ore-haul trucks and trailers used to transport ore from Tetlin"
- An order for "disclosure of all documents" related to the Tetlin project so they can be "forwarded immediately to . . . the Federal Bureau of Investigation."[28]

## C. *Motions to Dismiss and Opposition.*

The Defendants filed three motions to dismiss[29] and several joined each other's motions.[30] Contango's motion to dismiss argues that the Court lacks subject matter jurisdiction over Gunter's claims, they are time-barred, he is the wrong plaintiff for some claims, and that the Tetlin Tribal Council is a necessary party that cannot be joined due to sovereign immunity.[31] Kinross Gold's motion to dismiss argues that the Court lacks personal jurisdiction over it and that service was inadequate.[32] The tribal Defendants' motion to dismiss argues, like Contango, that the tribe is a necessary party that cannot be

---

[28] *Id.* at 38-70 (emphases omitted).

[29] Dkt. 8 (Contango Ore Inc.'s Motion to Dismiss Complaint to Quiet Title and for Equitable Relief); Dkt. 11 (Kinross Gold Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process); and Dkt. 20 (Tribal Defendants' Motion to Dismiss).

[30] Dkt. 12 (Fairbanks Gold Mining, Inc. and Peak Gold, LLC's Joinder in Motion to Dismiss Complaint); Dkt. 30 (Royal Gold Inc.'s Joinder in Motions to Dismiss Complaint);and Dkt. 32 (Young Defendants' Joinder in Motions to Dismiss).

[31] Dkt. 8.

[32] Dkt. 11.

joined due to sovereign immunity.[33] It emphasizes that in any event, the claims against the tribe's officials must be dismissed due to sovereign immunity.[34]

Gunter filed a consolidated opposition to the Defendants' motions to dismiss.[35] His arguments are summarized below as necessary.

## II.     LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(1) if the Court lacks subject matter jurisdiction. Jurisdictional attacks can be factual or facial.[36] A factual attack "disputes the truth of the [factual] allegations" triggering federal jurisdiction.[37] A facial attack, by contrast, accepts the allegations in the complaint as true and argues that they "are insufficient on their face to invoke federal jurisdiction."[38] In either situation, the plaintiff bears the burden of establishing federal jurisdiction.[39] The Court construes the complaint liberally because it was filed by a pro se litigant.[40]

---

[33] Dkt. 20 at 3-10.

[34] *Id.* at 11-15.

[35] Dkt. 37.

[36] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[37] *Id.*

[38] *Id.*; *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

[39] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[40] *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## III. DISCUSSION

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction.[41]

Federal courts may not hear a complaint without subject matter jurisdiction. Federal jurisdiction lies where the complaint presents a federal question, which arises in two main ways: (1) if federal law creates the plaintiff's cause or action or (2) state law creates the cause of action, but resolving the state claim involves a substantial federal issue.[42] If Gunter's complaint meets either of these standards, the Court has a foothold to assert subject matter jurisdiction.

But the complaint does not meet either standard. First, Gunter has no cause of action under ANCSA, and his bare citations to other federal laws are too underdeveloped to raise a federal question. Second, Gunter's state law claims do not raise a substantial federal issue. And third, Gunter may not rely on the tribe's sovereign immunity argument to create jurisdiction because it goes outside the complaint. The Court thus lacks subject matter jurisdiction.

---

[41] *Kokkonen*, 511 U.S. at 377 (internal citations omitted).

[42] *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012). There are other sources of federal jurisdiction, but they have not been asserted here.

### A. *Federal law does not create Gunter's cause of action.*

Federal jurisdiction exists when a complaint raises a federal question "under the Constitution, laws, or treaties of the United States."[43] One way to establish this is by showing "that federal law creates the cause of action."[44] But as explained below, Gunter has no cause of action under either ANCSA or the other federal laws referenced in the complaint.

### 1. *Gunter has no cause of action under ANCSA.*

Gunter's main argument is that federal jurisdiction exists because ANCSA creates a cause of action allowing him to challenge the 1996 land transfer for allegedly happening without a shareholder vote.[45] According to Gunter's theory, this cause of action exists because ANCSA "imposed clear requirements [] on how Native corporation lands can be managed or conveyed."[46] More specifically, he argues that ANCSA directly "require[s] that any significant transfer or encumbrance of [a corporation's] lands must have the consent of the corporation's shareholders."[47] ANCSA could do that either by independently imposing a voting requirement or by expressly incorporating a state law with that requirement—but ANCSA does neither.

---

[43] 28 U.S.C. § 1331.

[44] *Rude*, 690 F.3d at 1130 (citation modified).

[45] Dkt. 37 at 32.

[46] Dkt. 1 at 16.

[47] *Id.* at 16-17.

### a. *The argument that ANCSA independently required a shareholder vote is frivolous.*

When someone alleges that a federal law was violated, federal courts typically (but not always) have jurisdiction. However, a party cannot use an "obviously frivolous" federal claim to evade the Court's jurisdictional limits.[48] While it is difficult to show that a federal claim is frivolous, it can be done.[49] The claim must be "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."[50]

Gunter's argument that ANCSA independently requires native corporations to hold a shareholder vote before selling land is frivolous. Gunter does not cite or quote any part of ANCSA arguably imposing that requirement. He appears to rely on 43 U.S.C. § 1629b, but that section clearly does not apply.[51] It requires a shareholder vote before, as relevant here, a native corporation seeks to "convey all or substantially all of the assets of a Native Corporation to a *Settlement Trust*."[52] Gunter makes no such allegation here. Rather, he alleges that TNC transferred assets to the Tetlin Tribal Council, which is not a settlement

---

[48] *Rude*, 690 F.3d at 1131 (quoting *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 814 (9th Cir. 2002)).

[49] *Id.*

[50] *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998) (alteration adopted)).

[51] Dkt. 1 at 17.

[52] 43 U.S.C. § 1629b(a)(4) (emphasis added), (b) (requiring "a vote of the shareholders" when provision triggered). Other subsections of this provision require shareholder votes in other situations that are not applicable.

trust. Section 1629b thus does not apply, and Gunter has not meaningfully discussed any other part of ANCSA.

Precedent does not support Gunter's argument either. The Supreme Court has held that "ANCSA corporations received title to the transferred land in fee simple, and no federal restrictions applied to subsequent land transfers by them."[53] The law thus does not impose "any restraints on alienation."[54] While these quotes do not come from a case about procedural restrictions on ANCSA-related land transfers, they show that ANCSA was not meant to interfere with land sales held by native corporations.

None of the cases Gunter cites give him a cause of action under ANCSA.[55] For example, he says the Alaska Supreme Court held in *Jimerson v. Tetlin Native Corporation* that transactions affecting ANCSA lands "are invalid absent proper shareholder consent."[56] That is incorrect. Rather, *Jimerson* held that ANCSA barred certain transfers of ANCSA *stock*, not land.[57] Gunter also cites *Akiachak Native Community v. United States Department of Interior* for the idea that "the federal government retains oversight authority over land transactions involving" ANCSA.[58] But that holding, even if it were an accurate summary of *Akiachak*, would not mean that native corporations must hold shareholder votes before selling land. Indeed, the issue in *Akiachak* was not about corporate voting

---

[53] *Alaska v. Native Vill. of Venetie*, 522 U.S. 520, 524 (1998).

[54] *Id.* at 532.

[55] Dkt. 1 at 25-26.

[56] *Id.* at 25.

[57] *Jimerson*, 144 P.3d at 471-75.

[58] Dkt. 1 at 25.

procedures at all—it was about whether the federal government could take land into trust on behalf of a tribe. Plus, the D.C. Circuit held that it *lacked* jurisdiction to decide that issue given the posture of the case.[59] And finally, Gunter cites *Chugach Natives, Inc. v. Doyon, Ltd.* to argue "that the 1996 deed and similar transactions were improper."[60] But that case was about "whether sand and gravel are part of the surface or subsurface estate" under ANCSA.[61] Again, it had nothing to do with corporate voting procedures. These decisions simply do not establish or imply that Gunter has a cause of action under ANCSA.

In sum, the argument that ANCSA independently imposes voting requirements on native corporations selling land is frivolous. The Court recognizes the difficulty of making this showing and thus does not reach this conclusion lightly. However, Gunter is not advancing a debatable interpretation of an ambiguous law, which would clearly give rise to federal jurisdiction. He is relying on a phantom provision of ANCSA that does not exist. Beyond that, Gunter offers no explanation for how ANCSA directly imposes a voting requirement on native corporation land sales. And because Gunter's claim has no foundation in the text of ANCSA or any other tool of statutory interpretation, it is "completely devoid of merit as not to involve a federal controversy."[62]

---

[59] *Akiachak Native Comm. v. U.S. Dep't of Int.*, 827 F.3d 100, 102 (D.C. Cir. 2016) ("We therefore dismiss Alaska's appeal for lack of jurisdiction.").

[60] Dkt. 1 at 25.

[61] *Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 724 (9th Cir. 1978). Certain citations in Gunter's filings include incorrect and incomplete identifying information. The Court has done its best to find the cases Gunter meant to cite.

[62] *See Rude*, 690 F.3d at 1130 (quoting *Steel Co.*, 523 U.S. at 98).

13

**b.** *ANCSA does not incorporate the relevant state law.*

ANCSA-related cases can raise a federal question (and thus create federal jurisdiction) when a "state law is embedded in a federal-law claim."[63] So even though ANCSA does not independently require a shareholder vote before a native corporation land sale, Alaska law might. And if it does, claims under that state law raise a federal question if ANCSA expressly incorporates the Alaska law at issue.[64] But ANCSA does no such thing.

The Ninth Circuit outlined this approach in *Cook Inlet Region, Inc. v. Rude*.[65] In that case, a native corporation, CIRI, sued shareholders for how they handled petitions about alienating stock.[66] The complaint purported to bring claims under both ANCSA and state law.[67] One of the ANCSA claims "required the district court to apply Alaska law governing proxy solicitations to determine the legality of Defendant's shareholder petitions[.]"[68] Even though it seemed like state law created that cause of action, the claim actually arose under federal law (and thus created federal jurisdiction) because ANCSA expressly incorporated the state law at issue. But to do so, ANCSA did not mince words. It said that the "requirements of the laws of the State relating to the solicitation of proxies shall govern

---

[63] *Id.*

[64] AS 10.06.568(a) (requiring a shareholder vote for "[a] sale . . . of all, or substantially all, of the property and assets . . . of a corporation").

[65] *Rude*, 690 F.3d at 1127-31.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 1131.

solicitation of signatures for" the shareholder petition at issue.[69] *Rude* thus means that when ANCSA uses clear language to incorporate a specific state law, that can convert the state law cause of action into a federal one and create federal jurisdiction.

ANCSA lacks sufficiently clear language here. The Alaska law requiring shareholder votes before certain land transfers, AS 10.06.568(a), is only relevant because TNC was formed under state law—not because ANCSA says that state law "shall govern" TNC's land-sale activities, like the provision in *Rude* did.[70] True, ANCSA generically directed TNC to incorporate under Alaska law.[71] But if that general mandate were enough to incorporate AS 10.06.568(a), then ANCSA automatically incorporates every Alaska law governing corporations. And that would require federal courts to adjudicate virtually any ANCSA-related claim brought under the Alaska Corporation Code. There is no evidence that Congress wanted the federal judiciary to displace Alaska's state courts by exercising such sweeping jurisdiction over claims involving native corporations.[72] Because ANCSA does not clearly incorporate AS 10.06.568(a), ANCSA does not automatically federalize a

---

[69] 43 U.S.C. § 1629b(c)(1)(B).

[70] *Compare* 43 U.S.C. § 1607(a) (saying Native village "shall organize as a business for profit or nonprofit corporation under the laws of the State"), *with* 43 U.S.C. § 1629b(c)(1)(B) ("The requirements of the laws of the State relating to the solicitation of proxies shall govern solicitation of signatures.").

[71] 43 U.S.C. § 1607(a).

[72] *See Adams v. Kake Tribal Corp.*, 1:20-cv-9-SLG, 2022 WL 160656, at *5 (D. Alaska Jan. 18, 2022) ("Under Plaintiff's apparent interpretation, ANCSA subsection 7(h)(1)(A)(iii) would permit a federal court to hear *any* Alaska Corporations Code claim involving ANCSA stock. The Court does not discern such a broad congressional intent here, and in fact, most indications are to the contrary.").

native corporation shareholder's cause of action under that state law.

### 2. *Gunter's citations to other federal laws do not trigger jurisdiction.*

There is no federal jurisdiction over claims that "are so attenuated and unsubstantial that they are devoid of merit."[73] Gunter's bare citations to other federal laws fall in that category. At the end of the complaint, he cites the Treaty of Cession between Russia and the United States, the Indian Reorganization Act, the Indian Self-Determination and Education Assistance Act, and Executive Order 5365 (which he refers to as "Establishment of Tetlin Indian Reserve").[74] But Gunter offers no explanation of who violated these laws and how. Indeed, several of these laws deal with the relationship between a tribe and its members, yet Gunter chose not to sue the Tetlin Tribal Council, and he says this case "does not require the court to adjudicate tribal governance."[75] Merely citing a federal law without saying who violated it does not even give "fair notice of what [] the claim is and the grounds upon which it rests[.]"[76] These bare citations, without more, do not create federal

---

[73] *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)).

[74] Dkt. 1 at 68-70.

[75] Dkt. 37 at 33 (citation modified).

[76] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

16

jurisdiction.[77]

**B.** ***Gunter's state law claims do not raise substantial questions of federal law.***

There is a "special and small category" of state law claims that trigger federal jurisdiction.[78] This happens when state law creates the cause of action but "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[79] When exploring the "outer reaches" of federal jurisdiction, the Court must make "sensitive judgments about congressional intent, judicial power, and the federal system."[80]

None of Gunter's state law claims necessarily raise a substantial federal issue. Gunter's complaint arguably implicates AS 10.06.568(a), which requires a vote for "a sale . . . of all, or substantially all, of the property and assets . . . of a corporation." Nothing about that law points toward a federal issue given the above conclusion that ANCSA does not require a vote before a native corporation sells land. Thus, a state court applying AS 10.06.568(a) to the facts in Gunter's complaint can do so without meaningfully discussing ANCSA for more than context.

The claim that it was unlawful for the mining Defendants to proceed under the lease

---

[77] *See McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996) ("[A complaint must explain] who is being sued, for what relief, and on what theory, with enough detail to guide discovery.").

[78] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

[79] *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

[80] *Merrell Dow Pharms. Inc v. Thompson*, 478 U.S. 804, 810 (1986).

17

"despite the lack of clear title" also fails to raise a substantial federal issue.[81] Gunter says that their decision "demonstrates either intentional misconduct and fraudulent behavior, or a negligent and reckless disregard for clearly documented federal protections."[82] But Gunter does not say what law, federal or state, was violated. Even assuming this conduct might violate some law, it does not appear to be federal. Fraud and torts are typically governed by state law.[83] And Gunter's off-hand mention of "federal protections" changes little. A party may not create federal jurisdiction by making a vague reference to "federal protections" without identifying their source in federal law.[84]

A similar analysis applies to the claims against the other Defendants. Gunter alleges that they also engaged in fraud and torts.[85] But these claims arise (if at all) under state law.[86] The bare fact that these alleged torts involved a native corporation's land sale does not mean that the tort claims raise a substantial federal issue. They therefore do not establish federal jurisdiction.

---

[81] Dkt. 1 at 23.

[82] *Id.*

[83] *See Bank of the West v. Valley Nat. Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir. 1994) (applying state law to fraud claim); *In re Brown*, No. 23-60035, 2024 WL 2127040, *1 (9th Cir. 2024) (unreported but explaining that "[w]hether conduct is tortious is defined by state law (citing *Lockerby v. Sierra*, 535 F.3d 1038, 1041 (9th Cir. 2008)).

[84] *See Kokkonen*, 511 U.S. at 377; *also Shelley's Total Body Works v. City of Auburn*, No. C07-126P, 2007 WL 765205, at *2 (W.D. Wash., Mar. 9, 2007) ("Federal Courts have repeatedly held that vague, ambiguous, or passing references to federal law in a complaint are not sufficient to support removal based on federal question jurisdiction.") (collecting cases).

[85] Dkt. 1 at 28-30 (accusing Kristie Charley and Joseph A. Young of self-dealing and breach of fiduciary duty), at 21 (raising claims against Michael Sam).

[86] *Supra* n. 84 and Section III.A.

### C. *The Tribe's sovereign immunity argument is outside the complaint.*

Gunter argues that the Court has subject matter jurisdiction now that the Tetlin Tribe (a non-party) has entered a limited appearance to make various sovereign immunity arguments.[87] But Gunter cannot rely on these arguments to create federal jurisdiction because jurisdiction must be based on the plaintiff's statement of his own cause of action and not "some anticipated defense to his cause of action."[88] Because the Tetlin Tribe's sovereign immunity arguments go outside Gunter's "statement of his own cause of action[,]" they cannot serve as the basis for federal jurisdiction.[89] The Court thus lacks subject matter jurisdiction.[90]

### D. *Gunter may amend the complaint.*

This complaint, as written, raises state claims appropriate for state court. This Order permits Gunter to refile the same case in state court. But a federal trial court shall grant leave to amend "freely [] when justice so requires."[91] And that rule "is particularly

---

[87] Dkt. 37 at 32-33.

[88] *See Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152 (1908).

[89] *See id.*; *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) ("[T]he existence of a federal immunity to the claims asserted does not convert a suit arising under state law into one which . . . arises under federal law.").

[90] Because the Court lacks jurisdiction to decide this case, it does not reach the other arguments raised in the motions to dismiss.

[91] Fed. R. Civ. P. 15(a)(2).

important for the pro se litigant."[92] Given these mandates, Gunter may file an amended complaint in this case within 30 days of the date on this Order.

If Gunter elects to file an amended complaint, it must cure the deficiencies identified in this Order and (1) state all allegations in separately numbered paragraphs, and (2) separately list each claim and (a) who it is brought against, (b) what conduct supports it, and (c) what law the conduct violates. Failure to do so risks depriving the Defendants of fair notice of the claims against them.[93]

Gunter also must verify the accuracy of any legal citations in future filings with this Court. The Court understands Contango's frustration over time spent "chasing down nonexistent authorities[.]"[94] Gunter is reminded that even "unrepresented part[ies]" must verify the accuracy of the legal authorities cited in court filings.[95] Failure to do so in the future may be grounds for sanctions, including dismissal.[96]

---

[92] *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1148 (9th Cir. 1987)).

[93] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[94] Dkt. 40 at 18-19 (Reply in Support of Contango Defendants' Motion to Dismiss).

[95] Federal R. Civ. P. 11.

[96] *See id.*

## IV. CONCLUSION

The motion to dismiss at Docket 8 is **GRANTED**. The complaint is **DISMISSED** without prejudice and with leave to amend within 30 days of this Order.[97] The remaining motions to dismiss at Dockets 11 and 20 are **DENIED** as moot.

IT IS SO ORDERED.

DATED this 23rd day of April, 2026.

/s/ *Aaron Christian Peterson*
AARON CHRISIAN PETERSON
UNITED STATES DISTRICT JUDGE

---

[97] *See Mo. ex rel Koster v. Harris*, 847 F.3d 646, 650 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").