**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| KEVIN GUNTER,<br><br>Plaintiff,<br><br>v.<br><br>CONTANGO ORE, INC., *et al.*,<br><br>Defendants. | 3:25-cv-00307-ACP<br><br>**DISMISSAL ORDER**<br>[Dkt. 60] |

A native corporation formed pursuant to the Alaska Native Claims Settlement Act (ANCSA) transferred about 643,000 acres of land to a tribe's governing body in 1996. Then in 2008, the tribe leased most of the land to mining companies for exploration and development.

In 2025, the Plaintiff, a shareholder in the native corporation, filed a complaint against several parties with a connection to the land, including the mining companies and some of the tribe's leaders. The complaint mainly alleged that the 1996 land transfer was unlawful because it did not follow corporate voting procedures imposed, in his view, by ANCSA itself; it also alleged that various torts were committed. But the complaint was dismissed because the Court lacked subject matter jurisdiction.

The amended complaint fails to cure that problem. It still does not assert a federal question or otherwise establish federal jurisdiction. If the Plaintiff's claims arise at all, they arise under state law. The mining company's motion to dismiss is therefore **GRANTED**.

This matter is dismissed without leave to amend and without prejudice to refiling in state court.

## I. BACKGROUND

The relevant factual allegations are detailed in the Court's prior order at Docket 55, which is incorporated here, and will not be repeated in full. Briefly, the Tetlin Native Corporation (TNC) was chartered under Alaska law in 1973 and deeded over 700,000 acres of land by the federal government.[1] (Dkt. 56 at 22) In 1996, TNC allegedly transferred about 643,000 acres of land to the Tetlin Tribal Council, a tribal governance body, in exchange for $10. (*Id.* at 23-25; Dkt. 55 at 2-3)

In 2008, the Tribal Council allegedly entered a mineral lease with Contango Ore, Inc. that included most of the land acquired from TNC. (Dkt. 56 at 24) Negotiations over the lease allegedly involved Kristie Charley, an official for the Tribal Council; the lease was extended in 2014 by Micheal Sam, another official for the Tribal Council. (*Id.* at 16-17) And since entering the lease, Contango has partnered with other mining companies on the project, including Kinross Gold Corporation; Royal Gold, Inc.; Peak Gold, Inc.; and Fairbanks Gold Mining, Inc. (*Id.* at 11-18) In 2018, the Tribal Council allegedly entered a related sublease or similar agreement with Young's Timber, Inc, which is owned by Joseph A. Young. (*Id.* at 16; Dkt. 55 at 4)

---

[1] The Court takes well-pleaded factual allegations as true at this stage of litigation. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

### A. The Initial Complaint.

The pro se plaintiff in this case, Kevin Gunter, initially filed a 70-page complaint. (Dkt. 1) He appeared to raise three legal claims. First, he alleged that the initial 1996 land transfer is void because it happened "without any shareholder approval." (*Id.* at 3) He said this "violated federal law (ANCSA)" and the Native Corporation's "internal rules (no shareholder or proper tribal consent)." (*Id.* at 36) Second, Gunter alleged that the Defendants' mining activity was unlawful because it was done using "false, misleading, or incomplete information [about] the applicant's legal authority over the land." (*Id.* at 23) Third, he alleged that several Defendants engaged in fraud and various torts. (*Id.* at 28-30) Aside from his alleged violations of state law, Gunter relied on ANCSA as the principal federal statute for his case. (*Id* at 36)

The initial complaint was dismissed for lack of subject matter jurisdiction. The Court held that Gunter had no cause of action under ANCSA or any other federal law. (Dkt. 55 at 10-17) And his state law claims did not raise substantial federal questions. (*Id.* at 17-19) But Gunter was permitted to file an amended complaint.

### B. The Amended Complaint.

Gunter filed an amended complaint that is substantially similar to the initial one. (Dkt. 56) His new jurisdictional theory is that the amended complaint "raises a narrow embedded federal issue: whether named Defendants' instruments and federal-facing project records treated TNC—the ANCSA village corporation that received the former-reserve conveyance under 43 U.S.C. § 1618(b)—as interchangeable with separate tribal or council entities." (Dkt. 69 at 16; Dkt. 56 at 6) He labels this the "entity-identity problem."

(Dkt. 69 at 17) The Defendants moved to dismiss the amended complaint. (Dkts. 59-64) As explained below, the amended complaint is **DISMISSED** for lack of subject matter jurisdiction.

## II. LEGAL STANDARD

If a court lacks subject matter jurisdiction, Civil Rule 12(b)(1) requires dismissal. Jurisdictional attacks can be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack "disputes the truth of the [factual] allegations" triggering federal jurisdiction. *Id.* A facial attack accepts the allegations in the complaint as true and argues that they "are insufficient on their face to invoke federal jurisdiction." *Id.*; *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). In either situation, the plaintiff bears the burden of establishing federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court construes the complaint liberally because it was filed by a pro se litigant. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## III. DISCUSSION

A federal lawsuit may not proceed in the absence of subject matter jurisdiction. Here, Gunter argues that the Court has subject matter jurisdiction because the amended complaint raises a federal question.[2] (Dkt. 69 at 16) A cases raises a federal question if: (1) federal law creates the plaintiff's cause or action or (2) state law creates the cause of action, but resolving the state claim involves a substantial federal issue. *Cook Inlet Region,*

[2] Other sources of federal jurisdiction have not been asserted here.

*Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012).

Gunter argues that the Court has jurisdiction because the amended complaint raises "a narrow embedded federal issue: whether named Defendants' instruments and federal-facing project records treated TNC—the ANCSA village corporation that received the former-reserve conveyance under 43 U.S.C. § 1618(b)—as interchangeable with separate tribal or council entities." (Dkt. 69 at 16)

That provision says:

> Notwithstanding any other provision of law or of this chapter, any Village Corporation or Corporations may elect within two years to acquire title to the surface and subsurface estates in any reserve set aside for the use or benefit of its stockholders or members prior to December 18, 1971. If two or more villages are located on such reserve, the election must be made by all of the members or stockholders of the Village Corporations concerned. In such event, the Secretary shall convey the land to the Village Corporation or Corporations, subject to valid existing rights as provided in section 1613(g) of this title, and the Village Corporation shall not be eligible for any other land selections under this chapter or to any distribution of Regional Corporations funds pursuant to section 1606 of this title, and the enrolled residents of the Village Corporation shall not be eligible to receive Regional Corporation stock.

43 U.S.C. § 1618(b).

This statute does not create a private cause of action. Nothing in its text expressly authorizes suit. *Cf. Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (discussing statute allowing parties to "petition any court of competent jurisdiction"). Nor does this statute create an implied cause of action. The touchstone is whether Congress intended "to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Section 1618(b) discusses neither. Rather, it gives Village Corporations an option (they "may elect" to take certain title) and it directs the Secretary to "convey the

land" if they do. The statute does not even gesture at a private remedy against a corporation to enforce that procedure. The provision's single reference to "members or stockholders" governs only how the original election is made when two or more villages share a reserve. It does not confer an enforceable right on individual shareholders. And the Ninth Circuit has declined to find an implied cause of action under ANCSA provisions with far stronger language. *See Oliver v. Sealaska Corp.*, 192 F.3d 1220 (9th Cir. 1999). Thus, Section 1618(b) does not supply the cause of action for Gunter's claims.

Nor does Section 1618(b) bring Gunter's state-law claims within federal jurisdiction by incorporating state law. In *Cook Inlet Region, Inc. v. Rude*, a claim requiring application of Alaska's proxy-solicitation rules arose under federal law because ANCSA created a private cause of action and said that Alaska law "shall govern" such claims. 690 F.3d at 1127-31. As explained above, Section 1618(b) does not create a private cause of action, nor does it include comparable language incorporating state law in any event.

Gunter's framing of Section 1618(b) as a "narrow embedded federal issue" fares no better. (Dkt. 69 at 16) There is a "special and small" category of state-law claims that trigger federal jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). This happens when a state-law claim involves a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*; *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Gunter's theory fails each step. First, the question he identifies is not a question of federal law. Whether Defendants' "instruments and federal-facing project records" treated TNC as "interchangeable" with the Tribal Council is a factual question about what particular documents say. (Dkt. 69 at 16) His underlying claims (that the 1996 transfer is void for lack of shareholder approval and as a result of various torts) arise under Alaska law, and they can be resolved without reliance on ANCSA. (*See* Dkt. 55) The fact that TNC is an ANCSA corporation does not transform state corporate-law disputes into federal ones. Second, the scope of this dispute is not clear. No one appears to contest that TNC received the former reserve under Section 1618(b). Third, this question is not substantial. Rather, it is the type of "fact-bound and situation-specific" question that is less likely to trigger federal jurisdiction. *See Empire Healthchoice*, 547 U.S. at 701. And fourth, treating every dispute like this as a federal question would pull a broad class of state corporate and property claims into state court, and there is no evidence Congress meant to do so. Gunter's state-law claims thus do not trigger federal jurisdiction.

To the extent Gunter cites other federal laws or permits, those do not support federal jurisdiction because they are "are so attenuated and unsubstantial as to be absolutely devoid of merit" for the reasons identified at Docket 55. *See Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)).

## IV. CONCLUSION

The motion to dismiss at Docket 60 is **GRANTED**. The complaint is **DISMISSED** without prejudice to refiling state claims in state court. Leave to amend the federal

complaint is **DENIED** as futile because the Plaintiff was unable to cure the problems with the initial complaint by amendment. All remaining motions are **DENIED** as moot.

IT IS SO ORDERED.

DATED November 20, 2026, at Anchorage, Alaska.

/s/ *Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge